# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JOSEPH BALDONADO,

      Plaintiff,

vs.                                          No. CIV 99-366 JC/LCS (ACE)

NEW MEXICO STATE HIGHWAY
AND TRANSPORTATION DEPARTMENT,

      Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER came on for consideration of the following motions: (1) Defendant's Motion to Dismiss Plaintiff's Claims Under the Americans with Disabilities Act and Rehabilitation Act, filed October 27, 2000 *(Doc. 82)*; (2) Defendant's Motion for Partial Summary Judgment on Count I of Plaintiff's Amended Complaint, filed October 27, 2000 *(Doc. 62)*; (3) Defendant's Motion for Partial Summary Judgment on Count II of Plaintiff's Amended Complaint, filed October 27, 2000 *(Doc. 66)*; (4) Defendant's Motion for Partial Summary Judgment on Count III of Plaintiff's Amended Complaint, filed October 27, 2000 *(Doc. 70)*; (5) Defendant's Motion for Partial Summary Judgment on Count IV of Plaintiff's Amended Complaint, filed October 27, 2000 *(Doc. 74)*; (6) Defendant's Motion for Partial Summary Judgment on Count V of Plaintiff's Amended Complaint, filed October 27, 2000 *(Doc. 78)*. The Court has reviewed the motions, memoranda, and exhibits submitted by the parties and the relevant authorities.

I.      **Background**

Plaintiff Joseph Baldonado, an employee of the New Mexico State Highway and

Transportation Department ("Defendant"), is a partial quadriplegic who must use a wheelchair for

mobility.  *See* Amended Complaint for Damages and Equitable Relief at 1.  Plaintiff alleges five

separate counts of disability discrimination based on the following statutes:  (1) Title I of the

Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12111-12117; (2) Title II of the ADA, 42

U.S.C. §§ 12131-12165; and (3) Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.  *See id.*

Specifically, Plaintiff asserts in Counts I, II, III, and V that Defendant failed to provide

reasonable accommodations mandated by all three statutory provisions.  *See* 42 U.S.C.

§ 12112(b)(5)(A), 42 U.S.C. § 12132, and 29 U.S.C. § 794.  The following reasonable

accommodation claims are brought by Plaintiff:

- Count I - Defendant failed to reasonably accommodate Plaintiff when it equipped him with an unsafe access ramp to his office building;
- Count II - Defendant failed to reasonably accommodate Plaintiff when it denied his request to move his office from the second to the first floor;
- Count III - Defendant failed to reasonably accommodate Plaintiff because its training facilities were inaccessible;
- Count V - Defendant failed to reasonably accommodate Plaintiff when it denied his request to purchase a handicapped accessible van for use on field visits.

*See* Amended Complaint for Damages and Equitable Relief ("Complaint"), filed June 24, 1999

*(Doc. 19)* at 4-17.  Plaintiff also alleges in Count IV that Defendant's failure to promote Plaintiff

for nearly one year violated his rights under Title II of the ADA and Section 504 of the

Rehabilitation Act.  *See id.* at 16.

Defendant now moves to dismiss Plaintiff's claims and brings five separate motions for

partial summary judgment, attacking each of the five counts.  Plaintiff's Complaint seeks both

2

damages and injunctive relief; however, all of the claims for injunctive relief have been met.  *See* Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment on Count I, filed October 27, 2000 *(Doc. 64)* at 2.  Therefore, only Plaintiff's claims for damages remain.

**III.**   **Defendant's Motion to Dismiss**

   **A.**   **Standard of Review**

   Under Rule 12(b)(6), dismissal is inappropriate unless the plaintiff can prove no set of facts in support of his claims that entitle him to relief.  *See Morgan v.  City of Rawlins*, 792 F.2d 975, 978 (10th Cir.1986).   The granting of a motion to dismiss "must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice."  *See id.*   Cognizant of this standard, the Court will proceed to the merits.

   **B.**   **Analysis**

   Defendant's motion to dismiss presents three arguments. *See* Brief Supporting Defendant's Motion to Dismiss Plaintiff's Claims Under the Americans with Disabilities Act and Rehabilitation Act ("Df.'s Mot. to Dismiss") at 1, filed October 27, 2000 *(Doc. 83)*.  First, Defendant argues that the ADA and Rehabilitation Act do not validly abrogate a state's Eleventh Amendment immunity, thereby barring this lawsuit against a state entity in federal court.  *See id.* Second, Defendant argues that Title II of the ADA does not apply in the employment context. *See id.*  Finally, Defendant argues that Plaintiff's claims in Counts I, III, IV, and V under Title I of the ADA are barred because Plaintiff failed to comply with the applicable statute of limitations and failed to exhaust his administrative remedies.  *See id.* at 3.

### 1.      Eleventh Amendment Immunity

The Tenth Circuit has held that the ADA validly abrogates a state's Eleventh Amendment immunity.  *See Cisneros v. Wilson*, 226 F.3d 1113, 1127 (10th Cir. 2000).  However, Defendant argues that two circuits have ruled the opposite, and Defendant wants this Court to adopt their reasoning.  *See Lavia v. Pennsylvania, Dept. of Corrections*, 224 F.3d 190 (3rd Cir. 2000) and *Erickson v. Board of Governors of State Colleges and Universities for Northeastern Ill. Univ.*, 207 F.3d 945 (7th Cir. 2000).  Defendant does not present any new argument as to why *Cisneros* is inapplicable in this case and only mentions that there is a split in the circuits.  In accordance with the Tenth Circuit, the Court finds that the ADA validly abrogates a state's Eleventh Amendment immunity.  Therefore, Defendant's motion on this point is denied.

Furthermore, Congress amended the Rehabilitation Act in 1986 and required states that accept federal funds to waive their Eleventh Amendment immunity to suits brought in federal court for violations of Section 504.  *See* 42 U.S.C § 2000d-7; *see also Tyler v. City of Manhattan*, 118 F.3d 1400, 1409 (10th Cir. 1997) (Jenkins, dissenting).  Again, Defendant fails to present an argument to support its position.  Therefore, the Court finds that the Rehabilitation Act validly abrogates a state's Eleventh Amendment immunity, and Defendant's motion on this point is denied.

### 2.      Title II of the ADA

Defendant next moves to dismiss Plaintiff's claims under Title II of the ADA by claiming that Title II does not apply in the employment context.  *See* Df.'s Mot. to Dismiss at 1-2.  Defendant correctly points out that this Court has previously ruled on this same issue.  *See Goodgame v. City of Hobbs*, No. CIV 98-1412 JC/LFG (D.N.M. 1999).  In *Goodgame*, this

Court agreed with the reasoning of *Bledsoe v. Palm Beach County Soil and Water Conservation Dist.*, 133 F.3d 816 (11th Cir. 1998), and concluded that Title II of the ADA prohibits the same employment-related discrimination that the Rehabilitation Act covers.  Based upon the briefs, I see no reason to change my conclusion.

### 3.        Statute of Limitations

Defendant further moves to dismiss Plaintiff's claims in Counts I, III, IV, and V under Title I of the ADA based on the argument that Plaintiff failed to comply with the applicable statute of limitations and failed to exhaust his administrative remedies.[1]  *See* Df.'s Mot. to Dismiss at 3.

Title I of the ADA requires a plaintiff to file a discrimination complaint with the appropriate administrative agency within 300 days of the complained-of conduct.  *See* 42 U.S.C. § 2000e-5(e)(1); *see also Martin v. Nannie and the Newborns, Inc.*, 3 F.3d 1410, 1414 (10th Cir.1993).  With respect to Count I, Plaintiff fell on the access ramp on December 10, 1997. Plaintiff then filed his EEOC charge of discrimination on March 2, 1998, only 82 days after his fall.  *See* Ex. 1, attached to Pl.'s Response to Df.'s Mot. to Dismiss.  The EEOC issued a Right to Sue Letter on March 2, 1999.  Clearly, Plaintiff met the statute of limitations requirement and exhausted his administrative remedies.

With respect to Count III, "[w]hen an employee seeks judicial relief for incidents not listed in his original charge to the EEOC, the judicial complaint nevertheless may encompass any discrimination like or reasonably related to the allegations of the EEOC charge...."  *Brown v.*

---

[1] The Court will not address this argument with respect to Count V because Plaintiff no longer seeks damages under Count V.  *See* Plaintiff's Response to Defendant's Motion for Summary Judgment as to Count V at 1-2, filed October 27, 2000 *(Doc. 80).*

*Hartshorne Pub. Sch. Dist. No. 1*, 864 F.2d 680, 682 (10th Cir.1988).  Plaintiff's EEOC charge

of discrimination in 1998 alleges that Defendant exhibited a pattern and practice of repeatedly

denying Plaintiff's requests for reasonable accommodations.  *See* Ex. 1, attached to Pl.'s

Response to Df.'s Mot. to Dismiss.  Although the reasonable accommodation claim in Count III

was not mentioned in the EEOC charge, Count III reasonably relates to the alleged practice of

denying Plaintiff's requests for accommodation.  Thus, Plaintiff may seek judicial relief for Count

III.

      With respect to Count IV, Plaintiff seeks damages under Title II and Section 504.  First, a

plaintiff does not need to exhaust administrative remedies when bringing an action under Title II

or Section 504.  *See Bledsoe*, 133 F.3d at 824; *see also* 29 U.S.C. § 794a(a)(2).  Second, Title II

and Section 504 do not identify a statute of limitations for claims initiated in federal court, so the

applicable statute of limitation is borrowed from state law governing personal injury suits.  *See*

*Cheeney v, Highland Community College*, 15 F.3d 79, 81-82 (7th Cir.1994).  The statute of

limitations for personal injury suits in New Mexico is three years.  *See Macias v. Jaramillo*,

2000-NMCA-086, ¶ 24, 11 P.3d 153, 158 (N.M. Ct. App. 2000).  Thus, Title II and Section 504

have a three-year statute of limitations period.

      Turning to the sequence of events in this case, Count IV alleges that Defendant

discriminated against Plaintiff when it failed to promote him for nearly one year because of his

disability.  In early 1996, Plaintiff was being considered for a promotion until Defendant decided

to transfer another employee to the opening.  *See* Df.'s Reply in Support of the Motion to Dismiss

at 4, filed October 27, 2000 *(Doc. 85)*.  Plaintiff filed an internal EEO grievance in February of

1996 regarding this action, and Defendant decided to reconsider Plaintiff for the promotion.  *See*

*id.*; *see also* Pl.'s Response to Mot. to Dismiss at 6.  However, Plaintiff's promotion did not become effective until November 30, 1996.  *See* Pl.'s Response to Mot. to Dismiss at 6.  Count IV was filed as a part of Plaintiff's original Complaint on March 22, 1999, thereby falling within the three-year statute of limitations period.  Accordingly, Plaintiff has met the statute of limitations requirement

## IV.    Motions for Partial Summary Judgment

### A.    Standard of Review

Summary judgment is an integral part of the Federal Rules of Civil Procedure, which is intended "to secure the just, speedy and inexpensive determination of every action."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (citations omitted).  Under FED. R. CIV. P. 56(c), summary judgment is appropriate when the court, viewing the record in the light most favorable to the non-moving party, determines that there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law.  *See Thrasher v. B & B Chem. Co.*, 2 F.3d 995, 996 (10th Cir. 1993).  The movant bears the initial burden of showing "there is an absence of evidence to support the nonmoving party's case."  *Celotex*, 477 U.S. at 325.  Once the movant meets this burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial.  *See id*. at 324.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

**B.     Reasonable Accommodation Claims in Counts I, II, and III**

Plaintiff asserts in Counts I, II, and III that Defendant failed to provide reasonable accommodations in violation of Titles I and II of the ADA and Section 504 of the Rehabilitation Act (collectively, the "Acts").  All three of the Acts provide a similar duty upon an employer to reasonably accommodate a disabled employee.

Title I of the ADA prohibits disability discrimination in employment and requires state and local governments to accommodate the disabilities of qualified individuals.  *See* 42 U.S.C. § 12112(5)(A) (defining employment discrimination against the disabled as the failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee...unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of [its] business").  Likewise, Title II of the ADA requires public entities to reasonably accommodate their employees.  *See* 42 U.S.C. § 12131(2) (prohibiting state and local governments from discriminating against any qualified individual with a disability who, "with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or  activities provided by a public entity").  "Reasonable modification" as used in Title II does not create a

8

different standard than "reasonable accommodation" as used in Title I.[2]

Lastly, Section 504(a) of the Rehabilitation Act states that "[n]o otherwise qualified individual with a disability...shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).  The duty to make reasonable accommodation under Section 504 is explicitly stated in its implementing regulations: "A recipient shall make reasonable accommodations to the known physical or mental limitations of an otherwise qualified handicapped applicant or employee unless the recipient can demonstrate that the accommodation would impose an undue hardship on the operation of its program."  28 C.F.R. § 41.53.  Section 504(d) of the Rehabilitation Act provides that "the standards used to determine whether this section has been violated...shall be the standards applied under Title I of the [ADA]...."  29 U.S.C. § 794(d).  Therefore, the elements of a claim under Section 504(a) of the Rehabilitation Act are similar to the elements of a claim under Titles I and II of the ADA.  *See Donahue v. Consolidated Rail Corp.*, 224 F.3d 226, 229 (3rd Cir. 2000).

In order for an employer to be liable for failing to provide a reasonable accommodation, the employer must be aware of the employee's disability.  *See Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1171 (10th Cir. 1999); *see also Beck v. Univ. of Wisconsin Bd. of Regents*, 75 F.3d 1130, 1134-35 (7th Cir.1995). Once an employer's responsibility to provide a  reasonable

---

[2]Although Title II of the ADA uses the term "reasonable modification" rather than "reasonable accommodation," these terms do not differ in the standards they create.  Title II of the ADA was expressly modeled after Section 504 of the Rehabilitation Act, and Title II should be interpreted consistently with Section 504.  *See Zukle v. Regents of the Univ. of California*, 166 F.3d 1041, 1045 (9th Cir.1999); *see also Theriault v. Flynn*, 162 F.3d 46, 48 n. 3 (1st Cir.1998).  In turn, Section 504 directs that the standards of Title I shall apply when determining whether a party has violated Section 504.  *See* 29 U.S.C. § 794(d).  Therefore, the Court will continue the practice of using "reasonable modification" and "reasonable accommodation" interchangeably.

accommodation is triggered, it may be necessary for the employer to engage in an "interactive process" to determine the appropriate accommodation under the circumstances. *See Beck*, 75 F.3d at 1135; *see also* 29 C.F.R. § 1630.2(o)(3). The "interactive process" requires participation by both parties, and the employer must make a reasonable effort to determine the appropriate accommodation. *See Smith v. Midland Brake, Inc.*, 180 F.3d. at 1171-72.

Finally, a disabled employee may recover compensatory damages for intentional violations of Title I and Section 504. *See* 42 U.S.C. § 1981a(a)(2); *see also Powers v. MJB Acquisition Corp.*, 184 F.3d 1147, 1153 (10th Cir. 1999). However, the Tenth Circuit has not yet addressed whether compensatory damages under Title II requires proof of intentional discrimination. *See Davoll v. Webb*, 194 F.3d 1116, 1142 (10th Cir. 1999). Nevertheless, Title II's enforcement provision, 42 U.S.C. § 12133, incorporates the remedies of the Rehabilitation Act. Since compensatory damages under Section 504 of the Rehabilitation Act requires proof of intentional discrimination, Title II should also require a showing of intentional discrimination when it comes to the failure to provide a reasonable accommodation. *See Ferguson v. City of Phoenix*, 157 F.3d 668, 673 (9th Cir. 1998) ("By statute, the remedies for violations of the ADA and the Rehabilitation Act are co-extensive with each other...and are linked to Title VI of the Civil Rights Act of 1964...."); *see also Tyler v. City of Manhattan*, 849 F. Supp. 1442, 1444 (D. Kan 1994) (requiring a showing of intentional discrimination under Title II), aff'd on other grounds, 118 F.3d 1400. With the above principles in mind, the Court shall proceed to the merits of Defendant's motions.

### 1.    Defendant's Motion for Partial Summary Judgment on Count I

### a.    Background

Plaintiff claims that Defendant failed to provide a reasonable accommodation when it equipped him with an unsafe access ramp to his office building.  *See* Complaint at 4.  Plaintiff works at the Defendant's General Office on Cerrillos Road in Santa Fe, New Mexico.  On December 10, 1997, Plaintiff arrived at work and was maneuvering up a ramp at the General Office, when his wheelchair tipped over backwards and he injured himself.

The ramp was built in response to Plaintiff's assignment to Ray Puckett's design squad in 1994.  Mr. Puckett requested that the ramp be installed at its present location so Plaintiff would have easier access to his office.  Once the ramp was completed, Plaintiff claims that he immediately noticed the steepness of the ramp.[3]  Plaintiff also claims that he made numerous complaints to various employees and supervisors about the steepness of the ramp and the need to fix it; however, nothing was done.  *See* Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment on Count I ("Pl.'s Response on Count I") at 17-19, filed October 27, 2000 *(Doc. 64)*.

Defendant argues that Plaintiff failed to follow the formal guidelines for requesting a

---

[3]For the purposes of this motion, Defendant does not dispute that the length of the ramp was shorter than the technical specifications in the ADA Accessibility Guidelines which require a minimum slope of approximately 12 to 1, a five foot ramp in this situation.  *See* Brief Supporting Defendant's Motion for Partial Summary Judgment on Count I of Plaintiff's Amended Complaint at 4, filed October 27, 2000 *(Doc.63)*.

reasonable accommodation as set forth in the employee civil rights handbook.[4] *See* Brief

Supporting Defendant's Motion for Partial Summary Judgment on Count I of Plaintiff's Amended

Complaint ("Df.'s Mot. on Count I") at 6, filed October 27, 2000 *(Doc. 63)*.  Defendant further

argues that Plaintiff was aware of the process and had used it on previous occasions to request

other accommodations for his disability.  *See id.*  Consequently, Defendant argues that Plaintiff

failure to engage in this formal process caused the breakdown in the accommodation process.  *See*

*id.* at 17.

> **b.     Analysis**

Defendant contends that summary judgment is appropriate because Plaintiff cannot

establish intentional discrimination.  *See* Df.'s Mot. on Count I at 14.  Defendant argues that

intentional discrimination can only be shown by evidence indicating that Defendant officially

denied Plaintiff's request to modify the access ramp.  *See id.* at 15.  Since Plaintiff only made

verbal complaints to mid-level supervisors who had neither the training nor authority to correct

the problem, and he failed to participate in the formal process for requesting an accommodation,

Defendant maintains that no such evidence of intentional discrimination exists.  *See id.* at 14.

When an employer needs to provide a reasonable accommodation for a disabled employee,

---

[4]According to the Defendant's employee civil rights handbook, the Affirmative Action Programs Bureau was charged with compliance efforts of the ADA and Section 504 of the Rehabilitation Act. *See* Brief Supporting Defendant's Motion for Partial Summary Judgment on Count I of Plaintiff's Amended Complaint at 7, filed October 27, 2000 *(Doc.63)*.  Employees were permitted to bring any concerns regarding disability compliance to the Affirmative Action Programs Bureau's designated district EEO/AA liaison officer or a bureau chief/district engineer.  *See id.*  The issue was then to be forwarded to the Affirmative Action Programs Bureau which would conduct an investigation.  *See id.*  Following the investigation, the Affirmative Action Programs Bureau would forward its determination to the Office of General Counsel for review and comment.  *See id.*  The Affirmative Action Programs Bureau and the Office of General Counsel would then prepare a joint recommendation  which would be forwarded, if necessary, to the Deputy Secretary of Highways to render a formal written decision if appropriate.  *See id.*

the ADA and Rehabilitation Act envision an "interactive process" where both parties participate to find a solution. *See Templeton v. Neodata Servs., Inc.*, 162 F.3d 617, 619 (10th Cir. 1998). The interactive process generally begins with an employee notifying the employer of his or her disability and the need for an accommodation. *See Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1171-72. However, there may be exceptions to this general rule. *See Bultemeyer v. Ft. Wayne Community Schools*, 100 F.3d 1281, 1283 (7th Cir.1995) (employers share some responsibility in initiating discussions about accommodating disabilities). If an employer knew or should have known that an accommodation was needed, the employer may have an independent duty to set in motion the interactive process. *See Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1112 (9th Cir. 2000) ("The interactive process is triggered either by a request for accommodation by a disabled employee or by the employer's recognition of the need for such an accommodation."). Thus, "[t]he exact shape of this interactive process will necessarily vary from situation to situation and no rules of universal application can be articulated." *Smith v. Midland Brake, Inc.*, 180 F.3d at 1173.

Defendant's formal process for requesting a reasonable accommodation is not conclusive of whether it had a responsibility to reasonably accommodate Plaintiff. Rather, the duty to "trigger" the interactive process may rest with an employer in some circumstances. The important question is whether Defendant knew or should have known that Plaintiff sought an accommodation. In this case, Plaintiff has presented facts to suggest that supervisors, acting on behalf of the Defendant, knew Plaintiff required an accommodation. For instance, Plaintiff claims that he advised Reyes Garcia of the need to fix the ramp and make it ADA compliant. *See* Pl.'s Response on Count I at 17. As Bureau Chief for General Services, Mr. Garcia was in charge of

the Buildings and Grounds Department, and he had the authority to order maintenance work when he learned of problems that needed to be corrected. *See* Pl.'s Ex. 7, Dep. of Reyes Garcia at 10-11, attached to Pl.'s Response on Count I. In addition, Mr. Garcia's job required him to be familiar with ADA compliance. *See id.* Therefore, it is possible that a jury could find that Mr. Garcia had the authority to remedy the problem himself, without the need for Plaintiff to go through the formal accommodation process. Moreover, since Mr. Garcia allegedly had knowledge of the problems with the ramp, intentional discrimination can be inferred from his deliberate indifference in failing to assist Plaintiff. *See generally Powers v. MJB Acquisition Corp.*, 184 F.3d at 1153. Accordingly, this Court finds disputed facts with regard to Defendant's Motion for Partial Summary Judgment on Count I, and the motion is denied.

### 2.    Motion for Partial Summary Judgment on Count II

#### a.    Background

In Count II, Plaintiff alleges that Defendant failed to reasonably accommodate him when it denied his request to move his office from the second to the first floor. *See* Complaint at 8. Plaintiff requested this accommodation because he had concerns about the failure of building elevators and the lack of an evacuation plan from the second floor in the event of an emergency. *See* Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment on Count II ("Pl.'s Response on Count II") at 22-23, filed October 27, 2000 *(Doc. 68)*.

In 1994, Plaintiff received a job transfer to the highway design section and began working on the second floor of the office building. Because of his disability, Plaintiff was totally dependant on the building's elevators to get him to his office. Plaintiff alleges that from November 1997 to January 1999, the elevators in the building repeatedly failed and were out of service for extended

14

lengths of time.  *See* Pl.'s Response on Count II at 8.  On  June 8, 1998, Plaintiff requested that

Defendant move his work squad to the first floor because of the malfunctioning elevators.  *See*

Exhibit E, attached to Brief Supporting Defendant's Motion for Partial Summary Judgment on

Count II of Plaintiff's Amended Complaint ("Df.'s Motion on Count II"), filed October 27, 2000

*(Doc. 67)*.  On October 14, 1998, Defendant's EEO officer denied Plaintiff request.  *See* Pl.'s Ex.

16, attached to Pl.'s Response on Count II.  Plaintiff claims that Defendant did not engage in the

interactive process because Defendant denied his request without ever speaking to him about it.

*See* Pl.'s Response on Count II at 13.

On February 1, 1999, Plaintiff filed another request for accommodation concerning his

office location.  *See* Df.'s Exhibit J, attached to Df.'s Motion on Count II.  In addition to his

concerns about the elevators, Plaintiff also mentioned that Defendant lacked an appropriate

evacuation plan which accounted for his disability.  *See id.*  Defendant responded to this request

by pointing out that the elevators had been repaired and were now functioning.  *See* Df.'s Motion

on Count II at 5.  Defendant also agreed to formulate an evacuation plan specifically for Plaintiff.

*See id.*  Defendant maintains that throughout 1999, it worked on putting together such a plan

which included purchasing a stair evacuation device called an "evacutrac," as well as training

employees on how to use the device.  *See id.* at 6.  However, Plaintiff argues that the "evacutrac"

was an inappropriate accommodation because he was unable to independently transfer himself

from his wheelchair to the device.  *See* Pl.'s Response on Count II at 18.  Plaintiff also argues that

this problem occurred because the Defendant unilaterally decided to purchase "evacutrac" instead

of participating in the interactive process.  *See id.* at 19.

        **b.**      **Analysis**

Defendant moves for partial summary judgment on Count II by claiming that the repair and maintenance of the elevator was a reasonable accommodation. *See* Df.'s Motion on Count II at 11. However, Plaintiff claims that this accommodation was unreasonable because the elevators still had problems and Defendant denied his request without ever speaking to him about it. *See* Pl.'s Response on Count II at 13.

Compliance with the interactive process requires "a great deal of communication between the employee and the employer." *Bultemeyer v. Ft. Wayne Community Schools*, 100 F.3d 1281, 1285 (7th Cir. 1996). On June 8, 1998, Plaintiff requested that Defendant move his work squad to the first floor because of the malfunctioning elevators. *See* Ex. E, attached to Df.'s Motion on Count II. On October 14, 1998, Defendant's EEO officer denied Plaintiff's request. *See* Ex. 16, attached to Pl.'s Response on Count II. Defendant presents no evidence to show that it communicated or engaged in the interactive process with Plaintiff before it denied his request. Instead, Defendant's failure to communicate with Plaintiff may have resulted in an ineffective accommodation. Although Defendant maintains that the repair and maintenance of the elevators was reasonable, Defendant's own evidence shows that the problems with the elevators continued well into January of 1999. *See* Ex. I, attached to Df.'s Motion on Count II. Therefore, the Court finds disputed facts as to whether this accommodation was reasonable.

Defendant next moves for partial summary judgment by claiming that neither the ADA nor the Rehabilitation Act require evacuation plans for disabled employees in the event of an emergency. *See* Df.'s Motion on Count II at 8-10. In response, Plaintiff contends his request for an evacuation plan should be considered a request for a reasonable accommodation because an

evacuation plan is a privilege of employment.  *See* Pl.'s Response on Count II at 24.

"Qualified handicapped employees who can perform all job functions may require reasonable accommodations to allow them to...enjoy the privileges and benefits of employment equal to those enjoyed by non-handicapped employees...."  *See Buckingham v. United States*, 998 F.2d 735, 740 (9th Cir. 1993).  Moreover, this may require employers to alter existing policies or procedures that they would not change for non-handicapped employees.  *See McWright v. Alexander*, 982 F.2d 222, 227 (7th Cir.1992).  Although no specific provision of the ADA or the Rehabilitation Act requires an employer to develop an evacuation plan, the Court finds that a safe working environment is a privilege of employment which is covered by both the ADA and Rehabilitation Act.  Therefore, Defendant's motion on this point is denied.

Defendant next moves for partial summary judgment by claiming that even if an evacuation plan was needed, it attempted to reasonably accommodate the Plaintiff when it purchased an evacuation chair to assist him with emergency egress down a flight of stairs.  *See* Df.'s Motion Count II at 9.  However, Plaintiff claims that Defendant did not engage in the interactive process because it unilaterally purchased the evacuation chair which was itself an ineffective accommodation.  *See* Pl.'s Response on Count II at 36.

An employee must demonstrate that an employer's failure to engage in the interactive process resulted in the failure to identify an appropriate accommodation for the disabled employee.  *See Rehling v. City of Chicago*, 207 F.3d 1009, 1016 (7th Cir. 2000).  In this case, Plaintiff has presented sufficient evidence to suggest that Defendant failed to engage in the interactive process because it implemented an inappropriate accommodation.  Plaintiff offers testimony from an expert witness who suggests that an evacuation chair is not an appropriate

device for a quadriplegic.  *See* Ex. 2, Dep. of Melody Krech, attached to Pl.'s Response on Count

II.  Unlike a paraplegic, Plaintiff could not effect an independent transfer from his wheelchair to

the evacuation chair, and such a transfer would still require the assistance and specialized training

of fellow employees.  *See id.*  Therefore, such a device may have constituted an inappropriate

accommodation for Plaintiff.  *See id.*  Accordingly, Plaintiff has presented facts to show the

accommodation was unreasonable, and Defendant's Motion for Partial Summary Judgment on

Count II of Plaintiff's Amended Complaint is denied.

### 3.  Defendant's Motion for Partial Summary Judgment on Count III

#### a.  Background

In Count III, Plaintiff claims that Defendant failed to provide him with a reasonable

accommodation that would allow access to the training room in the basement of the General

Services Building.  *See* Complaint at 12.  Plaintiff attended training classes in the basement during

1997 and 1998, and the only means of access to the room was a ramp.  However, the ramp was

too steep for Plaintiff to navigate on his own, so other employees pushed Plaintiff up and down

the ramp.  During this time, Plaintiff alleges he complained to various individuals about the

steepness of the ramp and the unreliable nature of depending on other employees for access to the

training room.  *See* Plaintiff's Response in Opposition to Defendant's Motion for Summary

Judgment on Count III (Pl.'s Response on Count III) at 9-11, filed October 27 *(Doc. 72)*.

On February 1, 1999, Plaintiff filed a written request for an accommodation asking for the

training room ramp to be brought into compliance with the ADA guidelines.  *See* Ex. C, attached

to Defendant's Motion for Partial Summary Judgment on Count III of Plaintiff's Amended

Complaint ("Df.'s Motion on Count III"), filed October 27, 2000 *(Doc. 71)*.  On February 24,

1999, Defendant agreed to assess the situation and either modify the ramp or arrange for alternative training sites. *See* Ex. D, attached to Df.'s Motion on Count III. Defendant claims the modifications to the ramp were completed in June of 1999, and Plaintiff claims the ramp was completed in July or August of 1999. *See* Df.'s Motion on Count III at 3-4, and Pl.'s Response on Count III at 11.

### b.    Analysis

Defendant moves for partial summary judgment on Count III based on the argument that Plaintiff is not entitled to money damages because the Defendant did provide the ramp as requested. *See* Df.'s Motion for Partial Summary Judgment on Count III at 7. However, Plaintiff claims that the issue with respect to Count III is whether the delay in modifications to the ramp violated his right to a reasonable accommodation.

When an employer unreasonably delays the provision of a reasonable accommodation, a jury may infer that the employer was not acting in good faith and, as a result, has violated the requirement of providing a reasonable accommodation. *See Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 319-20 (3rd Cir. 1999). On February 1, 1999, Plaintiff filed his written request for an accommodation with regard to the training room ramp. *See* Ex. C, attached to Df.'s Motion on Count III. Three weeks later, Defendant agreed to look into the situation and assess the alternatives. *See* Exhibit D, attached to Df.'s Motion on Count III. On April 13, 1999, Defendant decided to fix the ramp and issued a memorandum to Reyes Garcia asking him to lengthen it. However, no action was taken with regard to the ramp by June 14, 1999, so Plaintiff amended his Complaint in this case and added this claim regarding the training room ramp. *See* Ex. 1, attached to Pl.'s Response on Count III. Thus, it was after the filing of Count III in the

19

Complaint that Defendant lengthened the ramp. *See* Ex. 5 at 107, attached to Pl.'s Response on Count III. Since the ramp was not modified until Plaintiff brought this action, a jury could find that Defendant did not make a good faith effort to initially modify the ramp and the delay was unreasonable. Accordingly, Defendant's Motion for Partial Summary Judgment on Count III of Plaintiff's Amended Complaint is denied.

### C.     Defendant's Motion for Partial Summary Judgment on Count IV

#### 1.     Background

Plaintiff asserts in Count IV that Defendant's failure to promote Plaintiff for nearly one year violated his rights under Title II of the ADA and Section 504 of the Rehabilitation Act. *See* Complaint at 16.

During 1995, Defendant underwent a reorganization and decided to add a new position (Highway Design Specialist) to each design squad. In order to be promoted to Highway Design Specialist, candidates had to be approved by their supervisors and staff engineer, with final approval by the bureau chief. Each Highway Design Specialist would receive a raise in pay upon promotion.

In November of 1995, supervisors were given the opportunity to submit the names of employees whom they believed were qualified for the new position. On December 15, 1995, Art Montoya recommended Plaintiff for a promotion to Highway Design Specialist. *See* Exhibit J, attached to Defendant's Motion for Partial Summary Judgment on Count IV of Plaintiff's Amended Complaint (Df.'s Motion on Count IV), filed October 27, 2000 *(Doc. 75)*. Sixto Martinez received the recommendation, approved it, and then he submitted the request to the unit supervisor, Ruben Chavez-Garcia, on January 3, 1996. *See id.* Plaintiff was the fourth employee

whose name was submitted for a promotion.

In February of 1996, Defendant decided to assign Ernie Thomas to Plaintiff's squad as a Highway Design Specialist.  Defendant claims that it transferred Mr. Thomas to Plaintiff's squad because the team was on "overtime" attempting to complete three projects.  *See* Defendant's Motion on Count IV at 4.  The transfer of Mr. Thomas effectively blocked Plaintiff's proposed promotion to Highway Design Specialist within his squad.  *See* Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment as to Count IV ("Pl.'s Response to Count IV") at 8, filed October 27, 2000 *(Doc. 76)*.  Mr. Thomas therefore declined the transfer.  *See* Df.'s Motion on Count IV at 4.  Subsequently, Defendant held a series of meetings to discuss Plaintiff's pending promotion and any necessary accommodations for his disability.  *See id.* at 5.  At the last meeting on March 4, 1996, Defendant decided to resubmit the paperwork for Plaintiff's promotion.  *See id.*  On March 21, 1996, Plaintiff's promotion was approved by various supervisors.  *See id.*  However, Plaintiff's promotion did not become effective until November 1996.

Defendant attributes the delay in the promotion to budgetary concerns.  *See* Df.'s Motion on Count IV at 6.  Defendant contends that it did not have the necessary money to pay for the raises for the new promotions, so it had to stagger the promotions throughout the year.  *See id.* at 3.  Defendant also contends that other individuals were promoted ahead of Plaintiff because his name was one of the last to be submitted for the new openings.  *See id.* at 4.  In response, Plaintiff claims that other employees who were not disabled were promoted ahead of him, and the Defendant found the necessary fiscal resources.  *See* Pl.'s Response on Count IV at 14.  Plaintiff also argues that Defendant provided numerous "changing" stories as to why his promotion was

delayed, and the real reason for the delay was Defendant's discriminatory motives.  *See id.* at 11.

### 2.    Analysis

To prevail on a Title II ADA and Section 504 discrimination claim, a Plaintiff must first establish the following prima facie case:  (1) he is an otherwise qualified individual with a disability; (2) he suffered an adverse employment action; and (3) he suffered the adverse employment action because of his disability.  *See Pushkin v. Regents of Univ. of Colo.*, 658 F.2d 1372, 1378 (10th Cir.1981); *see also White v. York International Corp.*, 45 F.3d 357, 360-61 (10th Cir. 1995); *see generally Taylor v. Pepsi-Cola Co.*, 196 F.3d 1106, 1109 (10th  Cir.1999).  If Plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate nondiscriminatory reason for its action.  *See Pushkin*, 658 F.2d at 1378; *see also Hardy v. S.F. Phosphates Ltd.*, 185 F.3d 1076, 1079 (10th Cir. 1999).  The burden then returns to the plaintiff to present evidence that the proffered reasons are a mere pretext for discrimination and unworthy of belief.  *See Pushkin*, 658 F.2d at 1378.

Defendant argues that Plaintiff cannot establish a prima facie case of discrimination because he never suffered an adverse employment action.  *See* Df.'s Motion on Count IV at 7.  Defendant argues that Plaintiff was not denied the promotion because he eventually received it.  *See id.*  An adverse employment action is defined as one that alters the employee's "compensation, terms, conditions, or privileges of employment...."  *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 533 (10th Cir. 1998).  Certainly, a privilege of employment is the ability to be considered for a promotion.  In addition, Plaintiff has produced evidence to show that his promotion was initially denied and subsequently delayed, thereby constituting an adverse employment action.  Around the end of the year in 1995, Plaintiff was chosen as a team leader

22

from his squad and selected by his supervisors for a promotion to the position of Design

Specialist. *See* Pl.'s Response on Count IV at 7. The paperwork for Plaintiff's promotion was

submitted on December 15, 1995, and it was on Section Chief Ruben Garcia's desk for approval

by January 3, 1996. *See id.* However, no action was taken on this promotion. *See id.* Instead,

in early February of 1996, Defendant allegedly decided to move Ernie Thomas (who is not

disabled and who already was a Design Specialist in a different unit) into Plaintiff's squad, thereby

effectively blocking Plaintiff's promotion to Design Specialist. *See id.* at 7-8. Mr. Thomas claims

that he refused this transfer because he saw it as an improper attempt to block Plaintiff's

promotion. *See* Ex. 7, Deposition of Ernie Thomas at 33-35, attached to Pl.'s Response on

Count IV. Plaintiff's promotion did not become effective until November of 1996, more than nine

months after it was originally proposed. The alleged attempt to block the promotion and its

subsequent delay establish an adverse employment action.

Once the plaintiff has established a prima facie case, the burden shifts to the employer to

articulate a legitimate nondiscriminatory reason for its action. *See Pushkin v. Regents of Univ. of

Colo.*, 658 F.2d at 1378; *see also Hardy v. S.F. Phosphates Ltd.*, 185 F.3d at 1079. First,

Defendant maintains that it assigned David Thomas as Design Specialist to Plaintiff's squad

because they needed the extra help. *See* Plaintiff's Motion on Count IV at 4. The squad was on

"overtime" attempting to complete three projects, and the assignment of Mr. Thomas was done

out of necessity and not in an attempt to block Plaintiff's promotion. *See id.* Second, Defendant

maintains that any delay in Plaintiff's promotion was due to budgetary issues. *See id.* at 3.

Defendant contends that when it created the new position of Design Specialist, several new

openings were available and would require salary increases. *See id.* However, Defendant

23

maintains that it failed to budget the necessary money for salary increases, so the promotions needed to be staggered throughout the year. *See id.* Therefore, any delay Plaintiff suffered was the result of other promotions being submitted first and due to the shortfall in Defendant's budget. *See id.* at 3-6.

Once a defendant presents evidence of legitimate reasons for its actions, the plaintiff must then be allowed to demonstrate that defendant's offered reasons are a mere pretext for discrimination. *See Pushkin*, 658 F.2d at 1378; *see also Hardy*, 185 F.3d at 1079-80. In this case, Plaintiff points to the deposition of Arthur Montoya, the chief Designer of Plaintiff's squad, who states that the squad was not having any problems, and they were not behind in their work. *See* Ex. 8, Deposition of Arthur Montoya at 7-9, 18-19, attached to Plaintiff's Response on Count IV. Plaintiff also presents evidence to show that despite any budgetary concerns, other employees were treated differently. Namely, the promotions of Richard Salazar, Gregory Hagman, and Steve Trujillo became effective within days of their approval. *See* Pl.'s Response on Count IV at 10. Thus, Plaintiff's promotion was the only one that took more than nine months to process. Accordingly, Plaintiff has produced sufficient facts to demonstrate that Defendant's offered reasons are a mere pretext for discrimination. Therefore, Defendant's Motion for Partial Summary Judgment on Count IV of Plaintiff's Amended Complaint is denied.

**D.    Defendant's Motion for Partial Summary Judgment on Count V**

Finally, Defendant moves for partial summary judgment on Count V which concerns Defendant's alleged failure to provide Plaintiff with a handicapped accessible van for trips into the field for his job. *See* Defendant's Motion for Partial Summary Judgment on Count V of Plaintiff's Amended Complaint at 1, filed October 27, 2000 *(Doc. 78)*. Because Plaintiff no longer seeks

24

damages under Count V, Defendant's Motion for Partial Summary Judgment on Count V of

Plaintiff's Amended Complaint is granted, and Count V is hereby dismissed with prejudice.  *See*

Plaintiff's Response to Defendant's Motion for Summary Judgment as to Count V at 1-2, filed

October 27, 2000 *(Doc. 80)*.

## V.    <u>Conclusion</u>

For the above reasons, the Court first finds that the ADA and Rehabilitation Act validly

abrogate a state's Eleventh Amendment immunity.  The Court next finds that Title II of the ADA

does cover employment discrimination.  Finally, the Court finds that Plaintiff complied with the

applicable statute of limitations and properly exhausted his administrative remedies with respect to

Counts I, III, and IV under Title I of the ADA.  Accordingly, Defendant's Motion to Dismiss

Plaintiff's Claims under the Americans with Disabilities Act and Rehabilitation Act is denied.

In addition, the Court finds disputed issues of material fact which preclude Defendant's

motions for partial summary judgment with respect to Counts I, II, III, and IV.  Accordingly,

these four motions for partial summary judgment are denied.  With respect to Count V, the Court

finds that Plaintiff has conceded his claim for damages, and Defendant's Motion for Partial

Summary Judgment on Count V of Plaintiff's Amended Complaint is granted.

Wherefore,

IT IS ORDERED that Defendant's Motion to Dismiss Plaintiff's Claims Under the

Americans with Disabilities Act and Rehabilitation Act, filed October 27, 2000 *(Doc. 82)* is

hereby denied.

IT IS FURTHER ORDERED that the following motions are hereby denied:  (1)

Defendant's Motion for Partial Summary Judgment on Count I of Plaintiff's Amended Complaint,

filed October 27, 2000 *(Doc. 62)*;  (2) Defendant's Motion for Partial Summary Judgment on Count II of Plaintiff's Amended Complaint, filed October 27, 2000 *(Doc. 66)*;  (3) Defendant's Motion for Partial Summary Judgment on Count III of Plaintiff's Amended Complaint, filed October 27, 2000 *(Doc. 70)*;  and (4) Defendant's Motion for Partial Summary Judgment on Count IV of Plaintiff's Amended Complaint, filed October 27, 2000 *(Doc. 74)*.

IT IS FINALLY ORDERED that Defendant's Motion for Partial Summary Judgment on Count V of Plaintiff's Amended Complaint, filed October 27, 2000 *(Doc. 78)* is hereby granted, and Plaintiff's claim with respect to Count V is hereby dismissed with prejudice.

DATED this 12th day of January, 2001.

_____
UNITED STATES DISTRICT JUDGE

Attorneys for Plaintiff:

    Richard Rosenstock, Esq.
    Daniel Yohalem, Esq.
    Debra Poulin, Esq.
    Santa Fe, New Mexico

Attorney for Defendant:

    Mark E. Komer, Esq.
    Herrera, Long, Pound & Komer, P.A.
    Santa Fe, New Mexico