IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOSEPH BALDONADO,

    Plaintiff,

vs.                                                No. CIV 99-366 JC/LCS (ACE)

NEW MEXICO STATE HIGHWAY
AND TRANSPORTATION DEPARTMENT,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER came on for consideration of the following motions: (1) Defendant's Motion for Remittitur of the Jury Verdict or, in the Alternative, for a New Trial, filed March 16, 2001 *(Doc. 142)*; and (2) Defendant's Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial, filed March 16, 2001 *(Doc. 144)*. The Court has reviewed the motions, memoranda and exhibits submitted by the parties, and the relevant authorities. The Court finds that Defendant's Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial is not well taken and will be denied. The Court further finds that Defendant's Motion for Remittitur of the Jury Verdict or, in the Alternative, for a New Trial is well taken and will be granted.

**I.**    **Background**

Plaintiff Joseph Baldonado, an employee of Defendant New Mexico State Highway and Transportation Department, is a partial quadriplegic who must use a wheelchair for mobility. Plaintiff brought suit against Defendant claiming that it failed to provide various reasonable

accommodations during the course of his employment and discriminated against him on the basis of his disability, all in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. The case proceeded to trial and the jury returned a verdict in Plaintiff's favor for an amount of $1,038,000. The award derives from findings of liability on three separate claims: (1) a failure to reasonably accommodate Plaintiff by failing to equip him with a safe access ramp to his office building; (2) a failure to reasonably accommodate Plaintiff by failing to implement a timely evacuation plan; and (3) discrimination against Plaintiff because of his disability by delaying his promotion.

**II.     Analysis**

    **A.     Defendant's Motion for Judgment as a Matter of Law, or in the Alternative, for a New Trial**

        **1.     Standard of Review**

Defendant argues that it is entitled to judgment as a matter of law, or in the alternative, to a new trial on all of the claims asserted by Plaintiff. Judgment as a matter of law is appropriate only if the evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion. *See Townsend v. Daniel*, 196 F.3d 1140, 1144 (10th Cir. 1999). A motion for judgment as a matter of law should be cautiously and sparingly granted. *See Deters v. Equifax Credit Info. Servs.*, 981 F. Supp 1381, 1384 (D. Kan. 1997) (quotation omitted). In addition, motions for a new trial are committed to the sound discretion of the trial court. *See id.* at 1385. Motions for a new trial are not regarded with favor and should only be granted with great caution. *See id.* In order to succeed on its motion for a new trial, Defendant carries the heavy burden of demonstrating that the verdict was clearly, decidedly, or overwhelmingly against

the weight of the evidence. *See Hynes v. Energy West, Inc.*, 211 F.3d 1193, 1206 (10th Cir. 2000) (citation and quotations omitted).

  **2.**  **Discussion**

    **a.**  **Delay in Plaintiff's Promotion**

Defendant first argues that Plaintiff failed to present evidence of pretext regarding the alleged discriminatory delay in Plaintiff's promotion. *See* Defendant's Brief Supporting Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial at 3-7, filed March 16, 2001 *(Doc. 145)*. Pretext may be shown by such weaknesses, implausibilities, inconsistencies, incoherence, or contradictions in the employer's proffered legitimate reasons for its adverse employment action. *See Morgan v. Hilti*, 108 F.3d 1319 (10th Cir. 1997).

Defendant maintains that any alleged delay in Plaintiff's promotion was due to a budget freeze in April of 1996. However, Plaintiff produced evidence to show that events prior to the budget freeze may have contributed to the delay in his promotion. For instance, Plaintiff's supervisor, Arthur Montoya, recommended him for a promotion to Design Specialist in December of 1995. While Plaintiff's promotion awaited approval from additional supervisors, Defendant decided to transfer Ernie Thomas into Plaintiff's squad in February of 1996 in order to fill the Design Specialist opening. Defendant claims this action was necessary because the squad was behind on the project. Yet, Arthur Montoya refuted Defendant's reason for transferring Mr. Thomas to his squad. Mr. Montoya testified that Plaintiff was capable of doing the work, nobody ever informed him that his squad was behind, and nobody consulted with him that a transfer was needed. Both Mr. Montoya and Mr. Thomas testified that the transfer effectively blocked Plaintiff's promotion. Consequently, Mr. Thomas refused to accept the transfer because of the

implications upon Plaintiff's promotion. The jury was entitled to conclude from the facts presented that Defendant's transfer of Mr. Thomas was pretextual and contributed to the unlawful delay in promoting Plaintiff.

In addition, Plaintiff presented evidence that Defendant failed to follow its policies and procedures with regard to Plaintiff's promotion. Plaintiff also offered evidence that Defendant gave inconsistent and changing explanations for its initial denial of Plaintiff's promotion and subsequent delay. From this evidence, the jury could reasonably infer that Defendant's proffered reasons for the delay were pretextual. Accordingly, Defendant's motion for judgment as a matter of law or new trial regarding the delay in Plaintiff's promotion is denied.

### b.     Evacuation Plan

Defendant further claims that Plaintiff failed to present evidence of intentional discrimination with regard to the alleged failure to accommodate Plaintiff with a timely evacuation plan. The Court disagrees.

Once an employee initiates the interactive process, both parties have an obligation to proceed in a reasonably interactive manner. *See Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1172 (10th Cir. 1999). A party should not be able to cause a breakdown in the interactive process for the purpose of either avoiding or inflicting liability. *See id.* A breakdown in the interactive process occurs when a party obstructs or delays the process by failing to communicate by way of initiation or response. *See id.*

Based upon the evidence presented, a reasonable jury could have concluded that throughout the relevant time period, Defendant simply refused to engage in a good faith, interactive process with Plaintiff in an attempt to resolve his need for an evacuation plan from the

second floor of the office building.  For example, on March 3, 1998, Plaintiff filed an EEOC complaint raising his concerns about being unable to evacuate from the second floor in the event of an emergency.  Plaintiff suggested that his squad be moved to the first floor as a reasonable accommodation.   On October 14, 1998, Defendant denied Plaintiff's request for an accommodation.  Plaintiff testified that from March 3, 1998, to October 14, 1998, Defendant never met with him regarding his request.  Instead, Plaintiff presented evidence to show that Defendant unilaterally purchased an evacuation device that was ineffective in meeting Plaintiff's needs.  Compliance with the interactive process requires "a great deal of communication between the employee and employer."  *Bultemeyer v. Ft. Wayne Community Schools*, 100 F.3d 1281, 1285 (7th Cir. 1996).

Furthermore, the testimony showed that Plaintiff had to rely on untrained volunteers  to carry him down the stairs when the elevators broke down on a couple of occasions.  "Carrying is permitted only in manifestly exceptional cases, and only if all personnel who are permitted to carry an individual with a disability are formally instructed on the safest and least humiliating means of carrying."  *Matthews v. Jefferson*, 29 F. Supp.2d 525, 533 (W.D. Ark. 1998).  Thus, the jury was entitled to conclude that carrying Plaintiff down a flight of stairs was not a reasonable accommodation.  Accordingly, Plaintiff's motion for judgment as a matter of law or new trial regarding the evacuation plan is denied.

### c. Safe Access Ramp

Defendant next argues that Plaintiff never notified the proper managerial authority with regard to the need to fix the ramp; therefore, Defendant's actions did not rise to the level of intentional discrimination.  However, Plaintiff presented evidence that individuals informed

5

Building and Grounds Bureau Chief Reyes Garcia that the ramp needed to be fixed. Plaintiff also presented sufficient evidence to show that Reyes Garcia had the authority to remedy the problem and act on behalf of the Defendant. Furthermore, Defendant's policies and procedures made clear that a reasonable accommodation could be made verbally to the Bureau Chief closest to the issue. In this case, the Bureau Chief closest to the issue of the ramp would have been Reyes Garcia. A number of witnesses also testified that Reyes Garcia was the individual to contact about fixing the ramp. Rudy Maestas, former EEO Bureau Chief, testified that Reyes Garcia had the responsibility of making sure the ramps at the building met federal disability requirements. Ruben Chavez-Garcia, the Section Head of the Design North, also testified that Reyes Garcia was the person to see about the ramp. Plaintiff, Ernie Thomas, and Arthur Montoya further testified that Reyes Garcia was responsible for fixing the ramp, and they repeatedly warned him that Plaintiff would get hurt unless the ramp was fixed. Thus, a reasonable jury could conclude that Defendant had sufficient notice of the need to fix the ramp, and Defendant's deliberate indifference amounted to intentional discrimination.

### d.     Other Issues

In addition, Defendant summarily raises a couple of issues in order to argue that it is entitled to a new trial. The Court will briefly address each issue. First, Defendant claims that the Court did not instruct the jury on the issue of proximate cause. Defendant argues that the jury could have determined that snow or Plaintiff's own choice to go up the ramp in inclement weather knowing that it was hazardous was the sole proximate cause of the fall. However, in Instruction No. 8E, the Court stated: "You may award compensatory damages only for the losses that the Plaintiff proves were proximately caused by the Defendant's allegedly wrongful conduct." Next,

Defendant argues that it should have been able to put in evidence that Plaintiff lied repeatedly in his deposition about his prior motor vehicle accident and prior psychological counseling.  As previously decided, the prejudicial impact of this information far outweighed its probative value. *See* FED. R. CIV. P. 403.  Accordingly, Defendant's motion for judgment as a matter of law or new trial regarding the fall on the ramp is denied.

### e. Eleventh Amendment Immunity

Finally, Defendant argues that it is entitled to judgment as a matter of law because the Rehabilitation Act does not validly abrogate a State's Eleventh Amendment immunity.  However, Congress amended the Rehabilitation Act in 1986 and required states that accept federal funds to waive their Eleventh Amendment immunity to suits brought in federal court for violations of Section 504.  *See* 42 U.S.C. § 2000d-7; *see also Tyler v. City of Manhattan*, 118 F.3d 1400, 1409 (10th Cir. 1997) (Jenkins, dissenting).

As Defendant points out, this waiver is not absolute.  Financial pressure applied by Congress may "pass the point at which 'pressure turns into compulsion.'"  *South Dakota v. Dole*, 483 U.S. 203, 211 (1987) (quoting *Steward Mach. Co. v. Davis*, 301 U.S. 548, 590 (1937)). However, Defendant failed to present evidence to support such an argument.  For instance, Defendant never indicated the amount of federal funds for highways in New Mexico placed at risk by the federal scheme, nor did it present evidence to show the difficulty of making up for the loss of those funds if the State elects not to waive its Eleventh Amendment immunity with respect to the Rehabilitation Act.  Therefore, this Court is unable to gauge whether the pressure to accept funds has turned into compulsion.  Accordingly, Defendant's motion for judgment as a matter of law regarding the Rehabilitation Act is denied.

### B. Defendant's Motion for Remittitur

#### 1. Standard of Review

Defendant moves the court for either a remittitur in the amount of $938,999 or a new trial on the grounds that the jury's award was excessive. Defendant "bear[s] the heavy burden of demonstrating that the verdict was clearly, decidedly, or overwhelmingly against the weight of the evidence." *Blanke v. Alexander*, 152 F.3d 1224, 1236 (10th Cir.1998) (internal quotations and citation omitted). A court will not disturb a jury's award of damages on a claim of excessiveness unless the award is so unreasonable as to shock the judicial conscience and to raise an irresistible inference that passion, prejudice, corruption, or other improper cause invaded the trial. *See Sanjuan v. IBP, Inc.*, 160 F.3d 1291, 1300 (10th Cir.1998).

#### 2. Discussion

Defendant initially argues that the damages award is excessive when compared to similar cases. Plaintiff responds by arguing that awards in similar cases have no bearing on whether the jury's award in this case was shocking. Plaintiff's argument that such comparisons are inappropriate is based on *Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235 (10th Cir. 2000). In *Smith*, the plaintiff's leg was crushed in an asphalt milling machine that the defendant manufactured. *See id.* at 1240. The plaintiff's leg was amputated above the knee, and he suffered numerous other physical and psychological injuries. *See id.* at 1252. The lawsuit asserted claims of negligence and strict liability. *See id.* at 1240. A jury awarded plaintiff $8,529,469 and his wife $1,213,000 in compensatory damages. *See id.* at 1252. In reviewing the damages awarded on appeal, the Tenth Circuit noted that it was hesitant to accept the invitation to undertake a comparative inquiry of jury verdicts in similar cases because such comparisons yield no insight into the evidence the

8

jurors heard and saw or how they used it during their deliberations. *See id.* at 1252. However, *Smith* is distinguishable from the case at hand because it involved a diversity action where state law governed the propriety of the damages awarded. *See id.* at 1251. By contrast, this action is based on a federal civil rights statute whereby federal law governs the propriety of a damages award. *See Garrick v. City and County of Denver*, 652 F.2d 969, 971 (10th Cir.1981). Furthermore, a comparison of a damages award with similar cases is not unusual. *See, e.g., Ramsey v. American Air Filter Co.*, 772 F.2d 1303, 1313 (7th Cir. 1985).

As Defendant points out, *Wulf v. City of Wichita*, 883 F.2d 842, 875 (10th Cir. 1989) is the more appropriate guide in determining whether to compare jury verdicts. In *Wulf*, the plaintiff brought a civil rights action against the city, city manager, and police chief following his termination. *See id.* at 842-43. In reviewing the damages award, the Tenth Circuit noted that while "comparisons with other cases are not dispositive," such an analysis may be helpful. *See id* at 875; *see also Hughes v. Regents of the Univ. of Colo.*, 967 F. Supp. 431, 437 (D. Co. 1996) ("A court may look at awards in similar cases to determine whether an award is excessive.") (*citing Sassaman v. Heart City Toyota*, 879 F. Supp. 901, 911 (N.D. Ind.1994)). In fact, the Tenth Circuit stated: "Our review of the record, informed by a review of awards granted in other comparable cases, indicates that the award should have been no greater than $50,000." *Wulf*, 883 F.2d at 875. Clearly, one of the factors the court relied upon in reducing the amount of damages in *Wulf* was the amount of comparable awards. Thus, this Court concludes that it is not inappropriate to engage in a comparison of awards in similar cases.

In this case, the jury returned a verdict in favor of the Plaintiff for an amount of $1,038,000. Plaintiff sustained approximately $4,000 worth of quantifiable economic damages

that he was allowed to recover. Thus, the jury awarded the Plaintiff $1,034,000 for pain and suffering and emotional distress arising from the findings of liability on the three separate claims. In other words, Plaintiff's intangible damages are approximately 258 times greater than the quantifiable economic damages he was allowed to recover.

To support its motion, Defendant relies on discrimination cases awarding anywhere from $10,000 to $50,000 for emotional distress. *See* Brief Supporting Motion for Remittitur at 4, filed March 16, 2001 *(Doc. 143)*. Defendant maintains that emotional distress damages deriving from discrimination rarely reach $50,000. Defendant further notes cases where evidence of headaches was one of the several elements of damages. *See id.* at 10. These awards range $40,000 to $145,000. *See id.*

In response, Plaintiff argues that the damages in this case should be compared to the damages in *Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235 (10th Cir. 2000) (jury awarded $7,000,000 in compensatory damages to plaintiff who suffered an amputated foot and lower leg injury, under theories of negligence and strict liability) and *Mascenti v. Becker*, 237 F.3d 1223 (10th Cir. 2001) (jury awarded $1,000,000 in compensatory damages to plaintiff who brought suit against dentist and dental assistant to recover for injuries he suffered during dental procedure, under theories of negligence and intentional infliction of emotional distress). *See* Plaintiff's Opposition to Motion for Remittitur at 8, filed April 6, 2001 *(Doc. 152)*.

In both instances, Plaintiff and Defendant cite cases which are easily distinguishable and rely on different theories of liability. Applicable to this case, the Court notes that damages awarded under the Rehabilitation Act have ranges from $62,000 to $250,500. *See, e.g., Howe v. Hull*, 873 F. Supp. 72, 74 (N.D.Ohio 1994) (jury awarded $62,000 in Rehabilitation Act suit);

10

*Roberts v. Progressive Independence, Inc.*, 183 F.3d 1215 (10th Cir. 1999) (jury award of $85,000 was supported by sufficient evidence in employee's Rehabilitation Act claim for failure to accommodate); *Ross v. Beaumont Hospital*, 678 F. Supp. 680 (E.D. Mich. 1988) (jury verdict amounted to an award of future damages in the sum of $50,100 per year for a period of five years, representing a total of $250,500). Thus, the Court first concludes that $1,034,000 is far greater than jury awards in comparable cases.

However, damages for pain and suffering are not susceptible to proof by a specific dollar amount, and a jury has wide discretion in rendering a particular amount. *See Blanke v. Alexander*, 152 F.3d 1224, 1237 (10th Cir.1998). Nevertheless, damage awards must be supported by substantial evidence. *See Wulf v. City of Wichita*, 883 F.2d 842, 874 (10th Cir. 1989). Thus, the relevant inquiry in this case is whether the compensatory award was excessive in relation to the injuries suffered by the Plaintiff. In this regard, the Court finds that even construing the evidence in the light most favorable to Plaintiff, the award is indeed too large for the injuries sustained.

Plaintiff presented little evidence of emotional damages resulting from Defendant's delay in promoting him. Plaintiff's only evidence consisted of his testimony that he felt humiliated and distressed because of the 10-month delay. Furthermore, Plaintiff presented little evidence of the emotional damages resulting from Defendant's failure to implement a timely evacuation plan. The damages attributable to this violation consisted of the emotional distress Plaintiff suffered when his friends and co-workers had to carry him down the stairs when the elevators broke a couple of times. Taking these two claims together, the emotional distress suffered by the Plaintiff was not so egregious as to warrant an amount anywhere near $1,034,000. Thus, a substantial portion of

11

the damages must have been awarded for the pain and suffering Plaintiff incurred as a result of the fall on the ramp. In fact, a majority of the evidence presented at trial with respect to damages was based on Plaintiff's pain and suffering from the headaches he sustained as a result of the fall on the ramp.

For example, Plaintiff claims that his headaches have gotten worse over the years. *See* Plaintiff's Opposition to Motion for Remittitur, filed April 6, 2001 *(Doc. 152)*. One of Plaintiff's physicians, Dr. Cohn, testified that Plaintiff's headaches were "totally incapacitating," and he suffered from them "for days on end." *See* Transcript of the Videotaped Deposition of Dr. Thomas G. Cohn at 19. However, Plaintiff's most recent physician, Dr. Black, testified that medication she prescribed to Plaintiff had "achieved some relief" and he reported headaches about "three to four times a week." Clearly, the evidence indicates a discrepancy with regard to the frequency and severity of Plaintiff's headaches. Moreover, one would reasonably expect Plaintiff's work performance and attendance to dramatically decrease if his headaches were frequent and severe. Yet, Plaintiff's performance evaluations have continued to be acceptable. *See* Plaintiff's Trial Exhibit 62. Also, the amount of leave taken by the Plaintiff due to headaches shows a steady decrease since the accident. *See* Plaintiff's Trial Exhibit 63.

In conclusion, the evidence presented regarding Plaintiff's headaches does not substantiate a damages award of $1,038,000. Simply put, the jury's award in this case shocks the judicial conscience. After thoroughly reviewing the evidence, I do not believe that it can fairly be said that the jury's damages award was supported by the weight of the evidence. Thus, Defendant is ordered to remit $500,000, leaving Defendant with an award of $538,000.

Wherefore,

**IT IS ORDERED** that Defendant's Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial, filed March 16, 2001 *(Doc. 144)* is **denied**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Remittitur of the Jury Verdict or, in the Alternative, for a New Trial, filed March 16, 2001 *(Doc. 142)* is **granted**. Plaintiff is ordered to remit $500,000, leaving him with an award of $538,000. If Plaintiff chooses not to accept this remitted amount, he shall notify the court to that effect in writing by no later than July 19, 2001, and a new trial on damages only will be scheduled.

DATED July 6, 2001.

_____
SENIOR UNITED STATES DISTRICT JUDGE

Counsel for Plaintiff:

    Richard Rosenstock, Esq.
    Daniel Yohalem, Esq.
    Santa Fe, New Mexico

Counsel for Defendant:

    Mark E. Komer
    Herrera, Long, Pound & Komer, P.A.
    Santa Fe, New Mexico